UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OAKMONT LIVONIA, LLC, *et al.*,

    Plaintiffs,

    v.

RHODIUM CAPITAL ADVISORS LLC,

    Defendant.
_____/

Case No. 22-11128

Hon. George Caram Steeh

OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE PARTIES' CROSS-MOTIONS
FOR SUMMARY JUDGMENT (ECF NOS. 41, 42)

Plaintiffs Oakmont Livonia, LLC, Oakmont Sterling, LLC, Oakmont Parkway, LLC, Oakmont Manor, LLC, and Oakmont Northville, LLC ("Oakmont") are suing Defendant Rhodium Capital Advisors, LLC ("Rhodium"), for breach of contract. Rhodium has counterclaimed for breach of contract and silent fraud. Before the court are the parties' cross-motions for summary judgment, which have been fully briefed. The court will grant in part and deny in part the motions, as explained below.

BACKGROUND FACTS

In this dispute involving a property deal gone sour, each party claims entitlement to the earnest money deposit. The parties entered an agreement for Rhodium to purchase five senior living communities:

Oakmont Livonia, Oakmont Sterling, Oakmont Parkway, Oakmont Manor, and Oakmont Northville. Rhodium submitted a deposit of $1 million, which was refundable under certain conditions. The parties agreed to an inspection period, and provided that if Rhodium was not satisfied with its inspection, it "may terminate this Transaction by providing written notice to Sellers. . . ." ECF No. 42-2, § 6(c). "If Purchaser does not so provide the Termination Notice, this condition shall be deemed waived, and the Transaction shall proceed to Closing as set forth in Section 13 hereof and the Deposit shall be nonrefundable except as otherwise provided in this Agreement." *Id.*

Section 12 of the agreement addresses defaults: "In the event of a default by Purchaser hereunder, Sellers shall be entitled to the Deposit as liquidated damages. . . . In the event of a default by any Seller hereunder, Purchaser shall be entitled, as its sole remedy, to either: (a) demand a return of the Deposit in termination of this Agreement; or (b) to maintain an action for specific performance against Sellers. . . ." ECF No. 42-2.

In section 7, the sellers made various representations and warranties, including that "[e]ach Seller has no actual notice of any violations of building codes with respect to the Properties. Seller discloses that the City of Sterling Heights has verbally required "Evacuation Plans" for Oakmont

Sterling because that facility has home care services on the premises and Seller is in the midst of working with the City on that and related issues." *Id.* at § 7(g). Oakmont further represented that "[n]one of the Properties are licensed Home for the Aged facilities." *Id.* at § 7(i).

The deal was scheduled to close in April 2022, but the closing did not take place. On April 27, 2022, Rhodium sent Oakmont a letter explaining its position that Oakmont was in default of the purchase agreement. ECF No. 42-9. Rhodium asserted that, contrary to section 7(g), building code violations existed at Oakmont Livonia, Oakmont Sterling, and Oakmont Manor. *Id.* Rhodium also alleged that Oakmont Manor "is believed to provide home care services that would require licensure as a Home for the Aged facility or an Exemption Certificate," contrary to the representation in section 7(i). *Id.* Rhodium sought the return of its deposit, but Oakmont refused.

Rhodium obtained records showing code violations at Oakmont Sterling and Oakmont Manor that had not been corrected as of January 24, 2022. ECF No. 42-5. Oakmont contends that these violations had been previously corrected, but that the City of Sterling Heights had not updated its records. *See* ECF No. 42-6. The Sterling Heights fire department issued a letter dated June 13, 2022, indicating that the "Oakmont Senior Living

Community campus have been cleared of their violations and are no longer considered non-compliant." *Id.* The letter noted that most of the violations "should have been cleared with the reinspection that occurred on 1/4/2018." *Id.* The remaining "deficiencies were corrected 5/12/2016." *Id.*

On February 2, 2022, Rhodium obtained a letter from the City of Livonia indicating that Oakmont Livonia "is currently NOT in compliance" because "the new franchise owner do[es] not have their required zoning compliance permit." ECF No. 42-5. Oakmont states that this zoning code issue occurred because the facility changed its management company and that the problem has been corrected.

On December 8, 2021, prior to the signing of the purchase agreement, Oakmont received an email from the Sterling Heights Fire Marshal stating that Oakmont Sterling is "in violation of the international fire code." ECF No. 42-7. The Fire Marshal advised that the building was built as an apartment complex, "not an I USE group that is required for anyone who cannot self preservate during an emergency. Everyone that resides in a Type 5 apartment building must be able to evacuate without assistance. . . . You are operating as a home for the aged and regardless of your status with the State of Michigan you must still abide by the fire code." *Id.* The Fire Marshal stated that one of Oakmont's options was to undertake a

-4-

"code analysis" and "make the necessary changes to provide the required protection that is needed for an I-USE group." *Id.* "Your second option is to simply provide independent living that is allowed in an R-2 use group and move those who require assistance to a safer building." *Id.* Oakmont did not disclose this email or the Fire Marshal's view that Oakmont Sterling was in violation of the fire code to Rhodium. ECF No. 42-4 at PageID 1428-29, 1439, 1441-42.

In light of its concerns regarding Oakmont Sterling residents' ability to self-evacuate in the event of a fire, the Sterling Heights Fire Department documented incidents involving that facility. On February 24, 2022, the fire department was called to Oakmont Sterling to assist a resident who had fallen. ECF No.  42-8. Firefighters reported that "[u]pon arrival pt was in the memory care unit which was locked. There was no alert button." *Id.* According to the fire department, there was only one staff member "on the memory care floor." *Id.*

The fire department was also "dispatched to a lift assist" at Oakmont Sterling on March 11, 2022. The report noted that one medical staff member was on duty and "there was no way" that person "was going to be able to lift this patient back into her bed by herself." *Id.* It further stated that "there is zero chance this poor resident . . . will be able to get herself out of

the facility in case of an evacuation or emergency of any kind. She is currently in hospice per staff and family. . . ." *Id.*

As of May 4, 2022, Oakmont Sterling did not have an evacuation plan that was approved by the city. ECF No. 42-4 at PageID 1525-26. And in the view of the Fire Marshal (now Assistant Fire Chief), Oakmont Sterling was not in compliance with the fire code as of the time of his deposition in April 2023. *Id.* at 1432-33; ECF No. 42-10 at PageID 1698.

After the deal failed to close in April 2022, Oakmont brought this action for breach of contract and declaratory relief, and Rhodium filed a counterclaim for breach of contract, declaratory relief, and silent fraud. The parties both seek summary judgment on their respective claims.

## LAW AND ANALYSIS

I.   Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. *Anderson*, 477 U.S. at 252.

## II. Breach of Contract/Declaratory Relief

The parties agree that Michigan law applies to their claims. The elements of a breach of contract claim are as follows: "(1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.*, 373 F. Supp.2d 707, 718 (E.D. Mich. 2005) (citation omitted). The court construes and enforces unambiguous contractual language as written. *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375, 666 N.W.2d 251, 259 (2003).

Oakmont contends that Rhodium did not submit a timely written notice of termination as provided in section 6(c) of the agreement and defaulted by failing to close the transaction. Rhodium responds that

Oakmont breached its representations and warranties, and that it is entitled to demand the return of its deposit pursuant to section 12. The court agrees that the contract does not require a notice of termination as set forth in section 6(c) in order for Rhodium to be entitled to the return of its deposit. Section 6(c) provides that if Rhodium does not submit a notice of termination within a certain time after the inspection period, "the Deposit shall be nonrefundable *except as otherwise provided in this Agreement*." (emphasis added). The agreement "otherwise" provides in section 12 that "[i]n the event of a default by any Seller hereunder, Purchaser shall be entitled . . . [to] demand a return of the Deposit in termination of this Agreement." By its terms, Section 12 operates independently of section 6(c) and does not require a written notice of termination or impose a time limit.

The court next considers whether Oakmont breached its representations and warranties under section 7, which provides that Oakmont "has no actual notice of any violations of building codes with respect to the Properties." Oakmont contends that it was unaware of code violations that were reflected in the records of the cities of Sterling Heights and Livonia and that these records were incorrect, as the violations had previously been addressed and cured. It is undisputed, however, that city

-8-

records reflected outstanding code violations and that these records were not addressed until after the closing date. Although Oakmont argues that Rhodium should have given it the opportunity to cure any violations, the agreement places the burden of addressing code violations on Oakmont. ECF No. 42-2 at § 4(d) ("Sellers will cure any and all building code violations . . . on or before the Closing.").

Moreover, prior to signing the purchase agreement, Oakmont had actual notice that the City of Sterling Heights Fire Marshal believed that Oakmont Sterling Heights was operating in violation of the international fire code. Oakmont argues that it sufficiently disclosed this information because it stated that the city "has verbally required 'Evacuation Plans' for Oakmont Sterling" in the agreement. Oakmont's disclosure did not provide the full picture, however; it did not disclose the email from the Fire Marshal or that the Fire Marshal had instructed it (1) to engage in a code analysis to bring the property into compliance, or (2) to move residents who could not self-evacuate to another facility. These requirements went significantly beyond the "evacuation plans" disclosed by Oakmont.

Rhodium states, and Oakmont does not dispute, that the representations regarding building code violations were important to its decision to enter into the purchase agreement. ECF No. 42-3.  Rhodium

-9-

did not want to purchase properties with code violations because "[i]n our experience, clearing code violations with municipalities can be expensive and time consuming." *Id.* at ¶ 12. In light of these facts, the court finds that Oakmont materially breached the representations and warranties set forth in section 7 and that this breach entitled Rhodium to a return of its deposit pursuant to section 12.[1]

### III. Silent Fraud

Rhodium also alleges a claim of silent fraud, which "is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation." *Alfieri v. Bertorelli*, 295 Mich. App. 189, 193, 813 N.W.2d 772, 775 (2012). "Such a duty may arise by law or by equity; an example of the latter is a buyer making a direct inquiry or expressing a particularized concern." *Id.*; *see also M & D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 31, 585 N.W.2d 33, 39 (1998).

Rhodium states that, prior to entering the purchase agreement, it inquired about code violations and whether Oakmont was providing

---

[1] Rhodium also alleges a breach based upon Oakmont Sterling's alleged operation of a locked memory care unit. The factual record surrounding this issue is not sufficiently clear to warrant summary judgment in Rhodium's favor. Although fire department emails reference a locked memory care unit, Oakmont's principal denied that there was such a unit at Oakmont Sterling. ECF No. 42-4 at PageID 1471-78.

medical care at the properties. "In response, Plaintiffs agreed to make representations and warranties in the Purchase Agreement" that Plaintiffs have "no actual notice of any violations of building codes with respect to the Properties," and that "[n]one of the Properties are licensed Home for the Aged facilities." ECF No. 42 at PageID 1336; ECF No. 42-2 at § 7. According to Rhodium, Plaintiffs failed to disclose existing building code violations and that Oakmont Sterling was provided unlicensed medical care in a "lock down" unit. In other words, Plaintiffs' failure to disclose this information rendered their contractual representations untrue.

The fatal flaw in Rhodium's claim is that Michigan does not recognize a cause of action in tort for a breach of a contractual obligation.[2] *See Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.*, 454 Mich. 65, 85, 559 N.W.2d 647 (1997). Rather, there must be a duty that is independent of the contract. No tort liability arises "for failing to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made." *Loweke v. Ann Arbor Ceiling & Partition Co.*, 489 Mich. 157, 166, 809

---

[2] Plaintiffs refer to this principle as the "economic loss doctrine" in their brief. ECF No. 44 at PageID 1854-55. The economic loss doctrine only applies to the sale of goods. *See MD Holdings, LLC v. R. L. Deppmann Co.*, 2022 WL 15527573, at *6 (Mich. App. Oct. 27, 2022). However, a similar rule applies here under common law. *See Hart v. Ludwig*, 347 Mich. 559, 565, 79 N.W.2d 895 (1956). Despite the label, Plaintiffs correctly focused on whether there was "a separate and distinct duty apart from any contractual obligation" under the rule of *Hart*, 347 Mich. at 565. *See id.*

N.W.2d 553 (2011) (citation omitted). The threshold question is "whether the defendant owed the plaintiff any legal duty that would support a cause of action in tort." *Id*. at 171. *See also Hart v. Ludwig*, 347 Mich. 559, 565, 79 N.W.2d 895 (1956) ("if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not").

Rhodium has not identified a legal duty of disclosure that is separate and distinct from Oakmont's obligations under the contract. Indeed, Oakmont's alleged duty of disclosure is indistinguishable from its contractual obligations. To the extent Rhodium alleges that it was induced to enter the agreement as a result of these non-disclosures, a claim of fraud in the inducement "by definition, redresses misrepresentations that induce the buyer to enter into a contract *but that do not in themselves constitute contract or warranty terms subsequently breached by the seller*." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 375, 532 N.W.2d 541, 546 (1995) (emphasis added).[3] A fraud in the inducement claim is viable when the misrepresentation is "extraneous

---

[3] Although *Huron Tool* involved the sale of goods and the economic loss doctrine, the same principles regarding fraud in the inducement have been applied to cases arising under the common-law rule of *Hart v. Ludwig*. *See Covenant Steel Warehouse, Inc. v. Arauco N. Am., Inc.*, No. 21-10609, 2021 WL 3401208, at *4 (E.D. Mich. Aug. 4, 2021) (citing cases).

to the contract." *Id.* at 373. "[W]here the only misrepresentation by the dishonest party concerns the quality or character of the goods sold," it "relate[s] to the breaching party's performance of the contract and do[es] not give rise to an independent cause of action in tort." *Id.* Because the alleged misrepresentations or omissions relate to Oakmont's warranties under the agreement, Rhodium has not established an independent tort claim here.

IV. Attorney's Fees

Rhodium seeks an award of attorneys' fees. In general, Michigan follows the "American rule" with respect to the award of attorneys' fees and costs. *Haliw v. City of Sterling Heights*, 471 Mich. 700, 706-707, 691 N.W.2d 753, 756 (2005). "Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Id*. However, "[r]ecovery has been allowed in limited situations where a party has incurred legal expenses as a result of another party's fraudulent or unlawful conduct." *Brooks v. Rose*, 191 Mich. App. 565, 575, 478 N.W.2d 731, 736 (1991).

Rhodium argues that it is entitled to its attorneys' fees based upon Oakmont's fraudulent conduct. *See Ypsilanti Charter Twp. v. Kircher*, 281

-13-

Mich. App. 251, 286-87, 761 N.W.2d 761 (2008). Given that Rhodium cannot recover for fraud, but only for breach of contract, it is not entitled to attorneys' fees under this theory. Moreover, the court is not persuaded that Michigan courts award attorneys' fees in fraud cases as a matter of course. Although the contours of the fraud exception are not clear, it appears to be limited to unusual cases. Attorneys' fees were awarded in *Kircher* when the "defendant flaunted the circuit court's orders requiring him to clean up and remediate the contaminated areas on his property, and when he refused to bring his buildings into compliance with applicable local ordinances" and the plaintiff "incurred substantial legal expenses as a result of defendant's unlawful conduct." *Kircher*, 281 Mich. App. 251, 286-87. The attorneys' fees awarded in *Kircher* appear to be akin to litigation sanctions. On the other hand, in a case involving the breach of a partnership agreement, the court determined that the "facts do not support an award of attorney's fees." *Brooks*, 191 Mich. App. at 575 ("Exceptions to the prevailing doctrine that attorney fees are not recoverable must be narrowly construed."); *see also Kasham v. Kasham*, 2019 WL 845775, at *3 (Mich. App. Feb. 21, 2019) (rejecting "the broad proposition that attorney fees are recoverable whenever a party is found liable for fraud"). Rhodium has not demonstrated that the facts of this case warrant an award of attorneys' fees.

CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' and Defendant's motions for summary judgment are GRANTED IN PART and DENIED IN PART, consistent with this opinion and order. The court will enter judgment on the contract claim in favor of Rhodium, which is entitled to the return of its earnest money deposit. The court will enter judgment in favor of Plaintiffs on Defendant's counterclaims for silent fraud and attorneys' fees.

Dated: January 12, 2024

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE